# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | |
| | : | Criminal Action No. |
| LOUIS BERIA | : | 2:20-CR-00053-RWS |
| | : | |
| Defendant. | : | |

## LOUIS BERIA'S MEMORANDUM IN SUPPORT
## OF A BELOW GUIDELINE SENTENCE

COMES NOW Defendant, Louis Beria, by and through his undersigned counsel, and respectfully submits his Memorandum in Support of a Below Guideline Sentence to this Honorable Court for consideration of the legal arguments and circumstances set forth herein, and in support thereof states as follows:

## I. INITIAL ADVISORY GUIDELINE CALCULATION

The Presentence Report (PSR) calculates Mr. Beria's sentencing guidelines at a total offense level  30 .  Should the Court accept the PSR analysis, Mr. Beria's sentencing guideline range would be 97-121 months.

As detailed in Mr. Beria's Corrections and Objections to the Presentence Investigation Report, the correct guideline and sentencing range is much lower. As the Plea Agreement provides, both the Government and the defense believe the

1

correct sentencing range to be 41 to 51 months[1]. Whichever guideline range the court accepts, the Defendant respectfully requests the Court to vary from the advisory guidelines range and impose a lower sentence.

## II. REQUEST FOR A BELOW GUIDELINE SENTENCE

The offense with which Mr. Beria was charged and pled guilty is a serious federal offense. He is mindful that his conduct and the negative impact of his actions are not to be taken lightly. He understands that he will be punished for same, however, there are mitigating factors which we respectfully bring to the Court's attention for its consideration in imposing a reasonable and appropriate sentence.

> Imposing a sentence on a fellow human being is a formidable responsibility. It requires a Court to consider, with great care and sensitivity, a large complex of facts, and factors. The notion that this complicated analysis, and moral responsibility, can be reduced to the mechanical adding-up of a small set of numbers artificially assigned to a few arbitrarily-selected variables wars with common sense. Whereas apples and oranges have but a few salient qualities, human beings in their interactions with society are too complicated to be treated like commodities, and the attempt to do so can only lead to bizarre results.
> -United States v. Gupta, 904 F. Supp, 2d 349, 350 (S.D.N.Y. 2012).[2]

---

[1] Pursuant to the Negotiated Plea Agreement, the Government has recommended the low end of the guideline range (41 months) as the appropriate sentence.

[2] We recognize that Gupta is not binding precedent in this district. However, the facts and parallel legal principles referenced therein are persuasive.

2

Mr. Beria respectfully requests that the Court impose a reasonable sentence which includes a combination of limited incarceration, a term of supervised release, the payment of restitution and community service.  This combination reflects the seriousness of his offense and meets the needs of the public, while still taking into consideration such mitigating factors as his age, medical condition, the escalating Covid-19 pandemic and overemphasis on loss as the sole driving factor under the guidelines.

## A. WHERE THE MONEY WENT

Louis Beria admitted and pled guilty to defrauding Werner Wicker of $1,621,979. What was done with the money is a critical question. Typically in fraud cases, the motive for the fraud is wealth and pelf, name and fame, and all of that noise- nothing could be further from the truth here. In fact, the story here of the use of the proceeds of the crime, substantially mitigates the seriousness of the offense. In 2015, Werner Wicker hired Beria to be the property manager for the Westminster Square Apartments. In addition to managing these apartments, Beria was part owner of another apartment complex called The Park at Sylvan, now known at Yorkminster Apartments. In July of 2016, Beria entered into an agreement with Sung Contracting to perform extensive renovations and improvements at Yorkminster. The renovations included the rehabilitation of the apartment buildings, the individual

3

apartment units, replacing the fence surrounding the property boundaries, instillation of new mechanical entrance/exit gate, renovation of the front office and utility storage buildings. The full contract price was $2,302,925 to be paid in installments. From July 6, 2016 through February 3rd, 2017, Beria paid Sung Contracting $1,621,979. As admitted by Beria in his plea of guilty, these funds were provided by Wicker in the belief that the money was being used to renovate Westminster Square Apartments, but were spent by Beria on the Yorkminster complex.

Every dollar of the $1,621,979 was indeed paid to Sung Contracting for the renovation of the Yorkminster apartments. Located at 2001 Sylvan Road, in southeast Atlanta, the one hundred and eighty-three unit apartment complex was a dilapidated and rodent infested series of mostly empty buildings unfit for human occupancy. See photographs attached hereto as Exhibits 1-7. Prior to Beria's purchase, the apartment complex was inhabited by drug dealers and squatters. The few families who lived in the apartment complex were in fear for their lives and for their children. Crime was rampant. Even police were reluctant to enter the complex.

Since taking over the apartment complex, Louis Beria has created a safe haven for the residents. Dilapidated structures have been totally renovated and converted to inviting living spaces the tenants are proud to call home. The grounds have been beautified and transformed from debris and garbage covered dirt areas into grass

4

covered common spaces and playgrounds for resident children and family picnic areas. See Exhibits 8-20. Residents and their visitors enjoy safe outdoor activities secure in the knowledge that they are a part of a clean and safe community, as evidenced by the letters attached hereto as Exhibits 21-36.

The following are excerpts from letters submitted by Yorkminster Apartments employees and residents.

> Louis has always shown extraordinary generosity and kindness to me and others for as long as I have known him. I can't say I have ever met a man quite like him. The way he has helped out tenants during this pandemic, taking special interest in cleaning up neighborhoods that have been let go and forgotten by the community, his desire to provide quality housing to lower-income communities, showing care and compassion for things most don't, is truly special and rare. He has transformed the communities he has touched into something that most wouldn't be able to imagine, turning crime and drug infested communities into family friendly "safe havens" for all. The employees that work for him, like working for him because of his passion and dedication to both them and the communities. He is always there for us for anything we need.
> -William Simpson
> General Manager of Westminster and
> Yorkminster Apartments

> I have worked with Mr. Louis Beria for the past two years in the Accounting Department. Meeting both our payroll obligations and paying our vendors during the pandemic has been a struggle because the majority of our tenants are presently out of work and unable to pay rent. It has been Mr. Beria's position to keep all of our staff at full salary and to pay our vendors in a timely manner even

when we did not take in enough rent to cover all of our financial responsibilities.

-Lisa Fingar

As the Property Leasing Manager at Yorkminster Square, I am proud to say I work for a man who set out to improve the lives of our tenants and the community in which I work and live. Prior to Mr. Beria purchasing the property, it was drug infested and one of the highest crime rates in the Atlanta Fulton County area. Mr. Beria worked closely with the local police department to rid the apartment complex of all the undesirable tenants and shady characters working around the neighborhood.

My professional career has also been directly impacted by Mr. Beria in ways that I could never have imagined. Just a few years ago, I was hired by Mr. Beria as part of the property janitorial staff. Thanks to Mr. Beria's philosophy of "hiring within", I was promoted from the cleaning staff to part time Assistant Leasing Manager then to full time Property Leasing Manager with full benefits within a short period of time. I am forever thankful for his kindness and financial generosity that will have an everlasting impact on my life and those around me.

-Phyllis Reid
Yorkminster Leasing Manager

I have trained and worked as a police officer at the apartment complex that Mr. Beria now owns. I can attest that the former apartments have been completely changed since Mr. Beria took over the complex.

The former apartment complex was infested with drugs, high violence, high crime, and was absolutely no place you would want to raise your children. Mr. Beria's renovations to the property alone makes its so much more beautiful for the residents who call it home. Before his renovations, the property was falling apart in every building and was no way safe to live in. After renovations

6

Mr. Beria contacted the local Atlanta police department and got us more involved to ensure the safety of his tenants. I then began to do security on the property.

Mr. Beria is needed in this community and I stand behind him.

-Samuel L. Moore, III


I am a resident at the Yorkminster Apartment complex. Because of Mr. Beria we are delighted and thrilled to live here. Without him things will be totally different here, he has a tremendous impact on our community.

-Tatyana Sanders


What a wonderful place Yorkminster is and what a great community has been made out of what was here prior. I am happy to have my grandchildren come visit me here.

-Jeanette Harley


This place has truly become a haven for Sylvan Road. Thank you for all you do!

-Caisey Blunt


Yorkminster has gone through quite the transformation over the past few years. I am very happy to call it home. The owner really maintains a safe and clean property. My granddaughter is able to play outside in the courtyards which are always maintained and safe. The owner has been very helpful with my rental payments this year which shows what a great human being he is. Thank you!

-Adrieinne Edwards


The owner of Yorkminster has worked with me in more ways than one. He allows my child to hang out with Ms. Phyllis in the leasing office after school if I am

running late from work. He makes sure the kids are safe getting off the bus. He really cares about the safety of my kids. He also has events in the community which is very nice, Christmas parties, Halloween parties, end of school parties. I feel good about letting my children play in the yard as it has really been cleaned up and no more crimes happening here since he has taken over. Also thank you to the owner for his compassion and doing whatever he can to help me get by on my rent this year. The owner is a vital member of our city.

-Destiny Rolland

I just want to tell you thank you from the bottom of my heart how I appreciate the community at Yorkminster. It is not only a business to you because you show love to your tenants, I am not sure of other tenants but I really appreciate you. Honestly, I am not sure if I would still be a tenant if you weren't here. Please don't change who you are. My family will always be thankful to you.

-Natalia John

I am deeply thankful and blessed for the special and thankful people like you in my life, your support and for uplifting both me and my family in this difficult time. We really appreciate you and may God continue to bless you.

-Natacha Kingoma

Predictably, the Covid-19 pandemic has had its devastating impact upon the tenants of Yorkminster Apartments. In spite of their inability to pay rent, Louis Beria has not evicted a single tenant during the pandemic. He continues to work with each and every occupant, allowing them to remain in their apartment whether or not they can afford to pay the rent. See Exhibit 37. While this has taken a toll on income, Mr.

8

Beria has continued to provide housing for the residents as well as the same level of maintenance and security that was enjoyed pre-pandemic. Currently, two hundred and twenty-five residents, including sixty-three children, occupy seventy five units at Yorkminster Apartments.

### B. Emphasis On Loss Is Inconsistent With 18 U.S.C. §3553(a)

The Defendant urges the Court to give appropriate consideration to the amount of the loss in this case, but not permit loss alone to drive the Defendant's sentence to a level that is unreasonable when considered in connection with all of the factors set forth in 18 U.S.C. §3553(a).

The loss table inevitably drives a Court away, and distracts it, from focusing on the important statutory instructions that a sentence must be "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2). In Guideline Calculations, which still serve as the starting point for federal sentencing decisions, the loss table dwarfs all other factors and distorts the assessment and impact of all other sentencing considerations. There is no reason to believe that Congress intended loss to overwhelm other considerations set forth in the statute. To the contrary, there is every reason to believe that the Guidelines' emphasis on loss undermines Congress' interest in a fair and balanced sentencing decision.

9

Loss as calculated according to the Guidelines is simply one aspect of the nature and circumstances of the offense and does not reflect or incorporate other more important sentencing factors. Focus on loss may undermine respect of the law by producing mechanical sentences based on manufactured and inflated numbers disconnected from a determination of a reasonable sentence. Emphasis on loss may result in an advisory Guidelines sentencing range that is illogical and indefensibly high. See, e.g., United States v. Corsey, 723 F.3d 366 (2d Cir. 2013) (Underhill, concurring). A sentence based primarily upon loss will often be irrelevant to the goal of protecting the public from further crimes of the defendant and may lead to an excessive, unjust and unreasonably long prison term for a defendant who poses no or little danger to the public. Finally, such a sentence may hinder the opportunity for the defendant to pay full restitution by effectively preventing him from being able to work productively to make restitution payments.

Data demonstrates widespread judicial disaffinity for the extreme sentences often produced under the Guidelines, and they are supported by sophisticated empirical analysis of sentences imposed by federal judges in fraud cases that has documented the role loss plays in fraud cases. One analysis found, not surprisingly, that "judges are more likely to disagree with Guideline recommendations in fraud cases that are driven substantially by loss." Mark H. Allenbaug *"Drawn from*

10

*Nowhere": a Review of the U.S. Sentencing Commission's White Collar Sentencing*

*Guidelines and Loss Data*, 26 Federal Sentencing Reporter 19, 26 (2013).

As an example, in United States v. Gupta, 904 F. Supp. 2d 349 (S.D.N.Y. 2012), Judge Jed Rakoff stressed the limited import and value of loss metrics when he sentenced the defendant.

> …the numbers assigned by the Sentencing Commission to various sentencing factors appear to be more the product of speculation, whim or abstract number-crunching than of any rigorous methodology – thus maximizing the risk of injustice. …in implementing the Congressional Mandate, the Sentencing Commission chose to focus largely on a single factor as the basis for enhanced punishment: the amount of monetary loss or gain occasioned by the offense.  By making a Guidelines sentence turn, for all practical purposes, on this single factor, the Sentencing Commission effectively ignored the statutory requirement that federal sentencing take many factors into account, see 18 U.S.C. §3553(a) and, by contrast, effectively guaranteed that many such sentences would be irrational on their face. Id. at 350-51.

Accordingly, the Defendant urges that the Court give appropriate consideration to the amount of the loss in this case, but not permit loss to drive the Defendant's sentence to a level that is unreasonable when considered in connection with all of the factors set forth in 18 U.S.C. §3553(a).  In sum, the Defendant shows that a below Guideline sentence is appropriate in this case, as the loss table, greatly

overstates the culpability of the Defendant and ignores other important sentencing factors.

## C. Unlikelihood Of Recidivism

The Supreme Court has recognized that the likelihood that a defendant will engage in future criminal conduct is a central factor that district courts must assess when imposing sentence.  Pepper v. United States, 131, S.Ct. 1229, 1242 (2011) (citing 18 U.S.C. §§3553(a)(2)(B)-(C)).  Mr. Beria is 64 years old. Having engaged in a fist fight some 18 years ago, he has no serious criminal record, rendering him a very low risk of recidivism.  As he is no longer associated with Werner Wicker's business or properties, this further removes him from the likelihood of repeated misconduct.  Therefore, the circumstances from which these offenses arose are not likely to recur.

 Significantly, when Mr. Beria learned of his indictment, he was in India, yet immediately returned to the United States and voluntarily surrendered to federal authorities in Atlanta. Because a sentence within the proposed guideline range will not serve the needs of the public any better than a below guideline sentence, such a sentence is greater than necessary under 18 U.S.C. §3553(a).

The sentence requested by the defense, a short period of incarceration followed by supervised release, restitution and community service, will satisfy the

goals of sentencing, which include the need to protect the public, to promote respect for the law, and to pay restitution.  See §§3553(a)(2)(A), (a)(2)(C) and (a)(7).  The fact that Mr. Beria has accepted responsibility for his misconduct demonstrates that protection of the public is not a concern.  He is capable of gainful employment and will continue to work and be a productive citizen.  A sentence of limited incarceration will also advance the public's interest in receiving payment of his restitution obligation.  Accordingly, §3553(a) factors weigh in favor of a sentence that would allow him to return to the community within a reasonable time to work, earn and pay restitution.


## D. BACKGROUND AND CHARACTER OF LOUIS BERIA

Louis Beria was born and raised in Venezuela in abject poverty.  He immigrated to the United States as a young adult and became a United States citizen. He has maintained gainful employment his entire life.  He is married yet legally separated from his wife of 41 years.  Together they have three children who reside in New York. He remains close with his family who continue to have faith in him, as is clear from the letters they have submitted to the Court attached hereto as Exhibits 38-44. To quote a portion of the comments:

> "I am his only daughter and the eldest of his three children. Growing up I remember my father always

working. Whether it was welding tools, working night shifts as a sheet metal fabricator, fixing our home and a plethora of other things, he was always doing the most he could to provide for his family. He worked his regular job during the day then toiled in our home throughout the evening. Although he was busy, my father always found time for his children.

My father is also extremely generous and kind. He is always willing to help others in any way he can. Throughout his life he has donated his time and knowledge to aid those in need. His charitable nature extends to all.

Throughout my life I have always felt thankful for having a father who remained steadfast to his family even though he never knew the same type of love and commitment. I understand that he has made mistakes and will need to face the consequences of his actions. Nevertheless, I implore you to take into consideration that Louis Beria, my father, has lived an overall upstanding, dedicated life and is the backbone of our family."

-Natasha Ramjit

"I was only four years of age when my father died. I grew up with a single mom and three other siblings. I thought I had the most difficult time growing up, but not until I met Louis I realized what a devastating childhood he had growing up with a stepfather who didn't care for him. At a young age he was forced to do strenuous labor to survive. We left Venezuela and migrated to America so our three children could be better educated. We lived in a basement with our three children. Louis was the sole provider for our family. He worked two jobs during the week and at weekends he delivered furniture for a company. For the forty years I have known Louis, I have always known him to be a kind, generous, sympathetic, hardworking, loving gentleman with the most appropriate behavior towards his family and friends.

14

I do understand that Louis made mistakes and I know he is embarrassed and regretted all of them because that is the kind of person he is. Your Honor, I realize your obligation is to make sure justice is done and those before you are truly punished but please take into consideration that Louis has been an integral part of the community for many years. His efforts have made positive impacts upon people's lives, whether its advice, participation or financially.

-Chandrowti Beria
Wife of Louis Beria

## E. THE DEFENDANT'S PERSONAL MEDICAL CONDITION

Louis Beria is 64 years of age. He suffers from high blood pressure, excessive bloating, sleep apnea, allergies and an undiagnosed pain in his lower hip. PSR at Paragraph 80. He has been in treatment since 2016 for hypothyroidism and continues to be treated by his physician for hypertension, hyperlipidemia, prediabetes, asthma, and anxiety. See Exhibits 45 & 46.

His current maladies make him particularly susceptible to the life-threatening effects of the coronavirus. With his weakened immune system and breathing difficulties, he would be at serious risk of death if he were to contract the disease. As such, a lengthy sentence of incarceration could be a death sentence.

## III. THE COMBINATION OF FACTORS ALLOWS A DOWNWARD VARIANCE

15

If this Court determines that none of the grounds submitted above standing alone forms a valid basis for a downward variance, this Court may, nevertheless, consider whether <u>any combination of factors</u> would authorize a downward variance. Courts have held that a combination of factors may warrant a departure, even when none of the factors alone would support such a departure.  In fact, the Sentencing Commission itself endorses the policy of affording the sentencing court wide latitude and discretion in examining factors for a downward departure.  The Sentencing Guidelines envision situations in which a combination of departure factors could result in a reduced sentence, even if none of the factors taken individually would warrant a departure.  U.S.S.G. §5K2.0(c).

## IV. SUFFICIENT BUT NOT GREATER THAN NECESSARY

Final punishment must be "sufficient but not greater than necessary to satisfy the purposes set forth in 18 U.S.C. §3553(a)(2)."  In fashioning a sentence in this case, the consideration of all §3553(a) factors favors the imposition of a sentence combining limited custody with supervised release, restitution and community service.  Such a sentence will reflect the seriousness of the offense, promote respect for the law, provide just punishment and afford adequate deterrence.  It is sufficient but not greater than necessary to comply with the purposes set forth in §3553(a)(2).

Louis Beria has accepted responsibility for his misconduct.  There is little if any concern that he will reoffend.  He is a good husband and father.  He is charitable and giving.  He is remorseful and repentant.  His age, coupled with his medical maladies support a sentence that includes a downward variance from the otherwise applicable guideline range.

## V. CONCLUSION

Accordingly, for all of the reasons states above, it is respectfully requested that the Court exercise its discretion and downwardly depart or vary from the advisory guideline sentence range and impose a combined sentence of a term of limited incarceration, restitution, and community service.

Respectfully submitted,


    s/ Bruce H Morris
BRUCE H. MORRIS
Georgia Bar No. 523575

17

                                        Attorney for Louis Beria

Finestone & Morris, LLP
Suite 2540 Tower Place
3340 Peachtree Road, N.E.
Atlanta, Georgia 30326
Phone: (404) 262-2500
Fax: (404) 231-1930
bmorris@fmattorneys.com

                                        s/ Randy S. Chartash
                                        RANDY S. CHARTASH, Esq.
                                        Georgia Bar No. 121760

3151 Maple Drive, N.E
Atlanta, Georgia 30305
Phone: 404-365-3884
Fax: 404-365-3885
randy@chartashlaw.com


                          CERTIFICATE OF SERVICE

        I hereby certify that I have this day filed the foregoing "*Louis Beria's
Memorandum in Support of a Below Guideline Sentence*" and will serve all counsel
via email.

        This  03  day of   March  , 2021.


                                 s/ Bruce H. Morris
                          BRUCE H. MORRIS

18