```
1            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF GEORGIA
2                    GAINESVILLE DIVISION

3

4
UNITED STATES OF AMERICA,        )
5            Plaintiff,          )
                                 )
6   -vs-                         )   Criminal Information
                                 )   No. 2:20-CR-053-RWS
7   LOUIS BERIA,                 )
            Defendant.           )
8

9

10
          Transcript of the Change of Plea Proceedings
11          Before the Honorable Richard W. Story,
          United States District Court Senior Judge
12                   November 4, 2020
                   Gainesville, Georgia
13

14

15  APPEARANCES OF COUNSEL:

16  On behalf of
    the Government:            Christopher J. Huber,
17                             Assistant United States Attorney

18

19  On behalf of
    the Defendant:            Bruce Howard Morris, Esq.
20

21

22

23  Reported stenographically by:
    Amanda Lohnaas, Official Court Reporter
24  United States District Court
    Atlanta, Georgia
25  (404) 215-1546
```

1          (Wednesday, 10:00 a.m., November 4, 2020, Gainesville,

2    Georgia; attorneys and defendant appearing via Zoom.)

3          THE COURTROOM DEPUTY:  The Court now calls for a change

4    of plea hearing in Criminal Action 2:20-CR-53, United States

5    of America versus Louis Beria.

6          Counsel, please state your name for the record.

7          MR. HUBER:  Good morning, Your Honor, Christopher Huber

8    for the United States.

9          THE COURT:  Good morning.

10          MR. MORRIS:  Good morning, Your Honor, Bruce Morris and

11    Mr. Beria.

12          THE COURT:  Good morning.

13          Before we proceed I want to go ahead and swear the

14    defendant.  So, Mr. Beria, if you would please raise your

15    right hand.

16          (Defendant duly sworn.)

17          THE COURT:  Thank you.  You may take your hand down.

18          We are here today for an entry of a plea in Mr. Beria's

19    case.  And, Mr. Beria, of course, you're participating by

20    video conference, along with your attorney, as well as the

21    prosecutor in the case, Mr. Huber.

22          I am presently in the courtroom in the federal

23    courthouse in Gainesville, Georgia, which is open to the

24    public at this time.

25          Before we proceed with this matter, because of the

1   unique way in which we are having to conduct our business at

2   this time, there are a few matters that I will need to cover

3   with you concerning the fact that we are proceeding by video

4   conference rather than with everyone being present in the

5   courtroom.

6       Let me stress to you that you do have the right to hear

7   and see everything that is happening.  So if at any time you

8   have difficulty hearing or seeing, please let me know and

9   we'll make sure that the communication is clear so that you

10  can see and understand everything that is taking place.

11      You also have the right during the proceedings to confer

12  with your counsel outside the hearing of the other parties in

13  this proceeding.  That is facilitated by the fact that you

14  are actually present with your attorney in his office and so

15  you can block -- we can be blocked from any conversations.

16  If you wish to have conversations there with your attorney,

17  he can simply mute the computer.  But you need to understand

18  you do have the right to consult with him during this

19  proceeding outside our hearing if you wish to do so.

20      You have the right to be physically present in open

21  court to enter a plea, but you can waive that right.  I'm

22  going to ask you in a few moments if you are willing to waive

23  that right but let me first put a few other additional

24  matters on the record.

25      Of course, we're experiencing a worldwide pandemic at

1    this time and, in response to that, Congress passed the CARES

2    Act, which permits defendants in criminal cases to appear in

3    court by video or telephone in certain types of proceedings

4    under certain circumstances.

5        Of course, our normal procedure would be that everyone

6    would be physically present here in the courtroom for the

7    taking of your plea.  But we are attempting, as best we can,

8    to protect the health and safety of everyone involved with

9    these proceedings while at the same time having the basic

10   functions of the court go forward without unnecessary delays.

11       To try to minimize the health risks, we give defendants

12   who prefer to appear in court by video the option to do so.

13   At this point it is voluntary; you do not have to agree to

14   appear by video.  If you choose to appear by video, I will be

15   asking you to waive your presence -- your right to be

16   physically present.

17       You do have the right to have the plea conducted in open

18   court in public view and with access by the public.

19       Do you understand that you have the right to be

20   physically present in open court for your plea?

21       THE DEFENDANT:  Yes, sir.

22       THE COURT:  Do you understand that you have the right to

23   consult with your lawyer during this proceeding?

24       THE DEFENDANT:  Yes, sir.

25       THE COURT:  Do you understand that you have the right to

1    hear and see everything that happens during this court

2    proceeding?

3        THE DEFENDANT:  Yes, sir.

4        THE COURT:  As I mentioned a moment ago, do you

5    understand that you have the right to have the public have

6    access to this proceeding?

7        THE DEFENDANT:  Yes, sir.

8        THE COURT:  Have you had a chance to talk with your

9    lawyer about waiving your right to appear in person?

10       THE DEFENDANT:  Yes, sir.

11       THE COURT:  And do you agree to waive your right to

12   appear in person for your plea and to instead appear by

13   video?

14       THE DEFENDANT:  Yes, sir.

15       THE COURT:  Do you also agree that to the extent your

16   right to public access to this proceeding is in any way

17   impaired, you also waive that right?

18       THE DEFENDANT:  Yes, sir.

19       THE COURT:  Mr. Huber, do you have any objection to the

20   Court accepting the defendant's waiver?

21       MR. HUBER:  No, Your Honor, but I would ask that you

22   also have him waive under Rule 5, since this is both his

23   initial appearance and his plea.

24       THE COURT:  All right, very well.

25       So this will be your initial appearance.  You are

1    willing to waive the opportunity to have an initial

2    appearance in person as well and proceed with this initial

3    appearance through a video conference with the same rights as

4    we've just described?

5         THE DEFENDANT:  Yes.

6         THE COURT:  Mr. Morris, do you have any objections to

7    the Court accepting those waivers?

8         MR. MORRIS:  No, Your Honor.

9         THE COURT:  Very well.  I find that the defendant has

10   knowingly and voluntarily waived his right to appear

11   physically and knowingly and voluntarily agreed to appear and

12   proceed by video conference for purposes of his first

13   appearance and entry of the plea.

14        I further find that the measures taken to provide public

15   access are reasonable under the circumstances and that to the

16   extent the defendant's right to public access is in any way

17   impaired, he has knowingly and voluntarily waived that right.

18        I further find that the case cannot be further delayed

19   without serious harm to the interest of justice and will

20   accept the waiver and we will proceed.

21        Before we get to the essence of the plea colloquy, I

22   want to also go ahead, since we're talking about rights and

23   so forth, and address one additional matter pursuant to the

24   Due Process Protections Act which was recently passed by

25   Congress, which requires that the Court issue an order, both

1    oral and written, on the first appearance or first scheduled

2    court date of the parties concerning *Brady versus Maryland*

3    and the obligations of the government under *Brady versus*

4    *Maryland*, and I do hereby order, and I will be entering a

5    written order simultaneously to this effect, that pursuant to

6    Rule 5(f) of the Federal Rules of Criminal Procedure, the

7    Court confirms the United States' continuing duty to disclose

8    material evidence which is favorable to the defendant as

9    required by *Brady versus Maryland* and its progeny.

10        If the Court finds that the government has failed to

11    comply with this obligation, the Court may, as appropriate,

12    order the production of such information, grant a

13    continuance, impose evidentiary and other appropriate

14    sanctions, such as requiring additional discovery training,

15    order a new trial, or, in extreme cases, dismiss charges.  As

16    I stated, the Court so orders and is entering a written order

17    to that effect as well.

18        We will now proceed to the taking of the plea and I will

19    allow, Mr. Huber, you to proceed at this time.

20        MR. HUBER:  Your Honor, we do need a waiver of

21    indictment to file the information.

22        THE COURT:  Yes.

23        MR. HUBER:  And so --

24        THE COURT:  If you will just confirm his signature.  I

25    did receive the waiver bearing his signature, if you will

1   just confirm his signature on that document, I will be asking

2   him about that.

3       MR. HUBER:  Okay, perfect, Your Honor, thank you.

4       Yes, Mr. Beria, you and Mr. Morris have signed the

5   waiver of indictment; is that correct?

6       THE DEFENDANT:  Yes.

7       MR. HUBER:  And that's your signature above where it

8   says Louis Beria, Defendant, on the waiver of indictment?

9       THE DEFENDANT:  Yes, sir.

10      MR. HUBER:  And that's waiving your right to be indicted

11  and agreeing to proceed by information in this case?

12      THE DEFENDANT:  Yes, sir.

13      MR. HUBER:  And, Mr. Morris, on that same document, the

14  waiver of indictment, is that your signature above where it

15  says Bruce Morris, Counsel for Defendant?

16      MR. MORRIS:  Yes, it is.

17      MR. HUBER:  And then turning to the guilty plea and plea

18  agreement, Mr. Beria, on page 14 of that guilty plea and plea

19  agreement to which you are pleading guilty to the charge in

20  the information, is that your signature again on page 14

21  above where it says Signature of Defendant, Louis Beria?

22      THE DEFENDANT:  Yes, sir.

23      MR. HUBER:  And then on page 15, the next page of that

24  plea agreement, is that your signature above where it says

25  Signature of Defendant, Louis Beria?

1    THE DEFENDANT:  Yes, sir.

2    MR. HUBER:  And, Mr. Morris, looking at that same guilty

3    plea and plea agreement on page 14, is that your signature

4    above where it says Signature of Defendant's Attorney, Bruce

5    H. Morris?

6    MR. MORRIS:  Yes, it is.

7    MR. HUBER:  And on page 16, similarly is that your

8    signature above where it says Signature of Defendant's

9    Attorney, Bruce H Morris?

10    MR. MORRIS:  Yes, sir.

11    THE COURT:  Thank you.

12    Mr. Beria, before I can accept your plea of guilty there

13    will be a number of matters that I will need to review with

14    you and this will involve my asking you a series of questions

15    as well.  As I ask those questions, if at any time you do not

16    understand my question, tell me and I will repeat it or

17    rephrase it to be sure that you do understand.  It's

18    important that you understand because it's important that you

19    answer truthfully.  A failure to truthfully answer a question

20    could result in additional charges being brought against you.

21    Also, the court reporter is present here in the

22    courtroom taking down these proceedings and she takes down

23    what we say.  So it's important that you speak loudly and

24    clearly so that she can hear you and we can have an accurate

25    record of this morning's proceedings.  Do you understand?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  How old are you, sir?

3          THE DEFENDANT:  64 years.

4          THE COURT:  And what's your education?  How far did you

5     go in school?

6          THE DEFENDANT:  High school.

7          THE COURT:  I'm sorry, did you say high school?

8          THE DEFENDANT:  High school, sir.

9          THE COURT:  In the last 24 hours have you taken any type

10    of drugs, medicine, pills, or had any type of alcoholic

11    beverage to drink?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  And what would that be?

14         THE DEFENDANT:  Alcohol and medication.

15         THE COURT:  At this time are you under the influence of

16    any type of alcohol or medication that would affect your

17    ability to make reasoned decisions for yourself?

18         THE DEFENDANT:  No, sir.

19         THE COURT:  Mr. Morris, are you aware of any issues

20    regarding your client's competence to enter a knowing and

21    voluntary plea at this time?

22         MR. MORRIS:  No, sir.

23         THE COURT:  Mr. Beria, I am going to go over a number of

24    rights that you are guaranteed by the Constitution and laws

25    of the United States to be sure that you understand your

1    rights, but also understand that by entering a plea of guilty

2    you are giving up many of these rights.

3         First, I want to talk about indictment.  You were asked

4    by Mr. Huber just a few moments ago to verify your signature

5    on a waiver of indictment.

6         Do you understand that as a person charged with a crime

7    in federal court you have the right to require the government

8    to present its evidence to a grand jury so that the grand

9    jury could decide if there were sufficient evidence to

10   require you to come in and answer these charges?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  Are you willing to waive that right and

13   proceed with the plea to a charge that is simply drawn by the

14   United States attorney and has not been presented to a grand

15   jury?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  Do you understand that regardless of how you

18   are charged, whether by information or indictment, that you

19   have the right to plead not guilty and to have a trial by

20   jury?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Do you understand that you have the right to

23   be represented by a lawyer throughout all proceedings, and

24   that if you cannot afford a lawyer one would be appointed to

25   represent you at no cost to you?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you understand that if you pled not

3     guilty and went to trial, at the trial you would be presumed

4     to be innocent and the government would have to overcome that

5     presumption and prove you guilty beyond a reasonable doubt?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Do you understand that at a trial you would

8     have the right to subpoena witnesses?  That means to get an

9     order from the court requiring your witnesses to come to

10    court and testify in your behalf.

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  And do you understand that the witnesses for

13    the government would have to come to court and testify in

14    your presence?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Do you understand that your lawyer would

17    have an opportunity to cross-examine any government

18    witnesses, to object to evidence offered by the government,

19    and to offer evidence in your behalf?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Do you understand that at a trial, while you

22    would have the right to testify if you chose to do so, you

23    also would have the right not to testify?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  And do you understand that if you chose not

1   to testify, or put on any evidence, those facts could not be

2   used against you?

3       THE DEFENDANT:  Yes, sir.

4       THE COURT:  Do you understand that at a trial, a jury

5   would have to reach a unanimous verdict that you were guilty

6   before you could be convicted?

7       THE DEFENDANT:  Yes, sir.

8       THE COURT:  Mr. Beria, do you understand that if I

9   accept your plea of guilty you are not going to have a trial?

10      THE DEFENDANT:  Yes, sir.

11      THE COURT:  Do you understand that I will simply make a

12  finding that you are guilty based on your admission here in

13  court that you committed the crime with which you are charged

14  in this information?

15      THE DEFENDANT:  Yes, sir.

16      THE COURT:  And are you willing to give up that right to

17  a jury trial and plead guilty to the charge contained in the

18  information at this time?

19      THE DEFENDANT:  Yes, sir.

20      THE COURT:  A few moments ago you verified your

21  signature on a plea agreement that you've entered into with

22  the government.

23      At this time I'm going to ask Mr. Huber to go over the

24  essential terms of that agreement on the record.  When he

25  finishes I will simply be asking you if this written

1    agreement accurately represents the agreement that you

2    believe that you have reached with the government.

3        Mr. Huber.

4        MR. HUBER:  Thank you, Your Honor.

5        The guilty plea and plea agreement states that you are

6    pleading guilty because you are in fact guilty of the crime

7    charged in the information.

8        It goes over the rights that Judge Story just reviewed

9    with you.

10        It states the penalties applicable to the charge in the

11    information.

12        Judge Story, would you like me to go over those

13    penalties now or later?

14        THE COURT:  I'll have you go over them in a few moments.

15        MR. HUBER:  Okay.  It also states that if you are not a

16    United States citizen, by pleading guilty you may end up

17    being removed from the United States.  That is, deported.

18        In the plea agreement the government agrees to dismiss

19    the counts that are in the case pending at 2:20-CR-26.  The

20    United States also agrees not to bring additional charges

21    related to the charges in the information.

22        There are some sentencing guidelines recommendations

23    that are agreed to between the government and you.

24        First, we agree that the applicable offense guideline is

25    Section 2B1.1.  We agree that there's a 16-level upward

1    adjustment for a loss amount of $1,621,979.  We agree that

2    you not receive the two-level upward adjustment related to

3    sophisticated means.  We agree that you do receive the

4    two-level upward adjustment for abuse of position of trust.

5        The government agrees to recommend that you receive the

6    greatest amount of reduction for acceptance of

7    responsibility, assuming you continue to accept

8    responsibility through sentencing.

9        The parties reserve the right to answer questions,

10   correct misstatements, and make recommendations to the Court.

11       The government reserves the right to modify its

12   recommendations if new facts come to light.

13       Assuming you continue to accept responsibility through

14   sentencing, the government agrees to recommend the low end of

15   the adjusted guideline range found by the Court.

16       You agree to pay restitution in the amount of

17   $1,621,979.  You also agree to forfeiture and to pay a $100

18   special assessment to the Court.  There are also, if the

19   judge orders a fine and the restitution, there are payment

20   provisions for that and financial disclosure obligations that

21   you are undertaking.

22       The plea agreement states that you recognize that the

23   recommendations and stipulations agreed to between you and

24   the government are not binding upon the Court and the Court

25   can come to different conclusions than we have agreed to.

1      You also are waiving most of your appellate rights under

2  the limited waiver of appeal.  You waive to the extent -- the

3  maximum extent possible or permitted your right to appeal any

4  sentence and your guilt except on three grounds.

5      One is that if the government appeals then you are

6  permitted to cross-appeal.  Second is if the Court sentences

7  you to an above guideline sentence you are permitted to

8  appeal.  And you reserve the right to challenge your --

9  whether your counsel provided ineffective assistance.

10      You also are waiving your FOIA and privacy rights and

11  agree there are no other agreements between you and the

12  government related to this plea agreement.

13      Thank you, Your Honor.

14      THE COURT:  Thank you.

15      Mr. Beria, does that represent the agreement you have

16  with the government as you understand it?

17      THE DEFENDANT:  Yes, Your Honor.

18      THE COURT:  You understand that provisions in the

19  agreement, particularly regarding the government's

20  recommendations about sentencing and sentencing guidelines,

21  are not binding on the Court?

22      THE DEFENDANT:  Yes, sir.

23      THE COURT:  In other words, if I choose not to follow

24  some recommendation that is contained in this agreement, do

25  you understand that you would still be bound by your plea of

1   guilty and that would not give you the right to withdraw your

2   plea?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Aside from this agreement, has any other

5   promise of any kind been made to you to get you to plead

6   guilty?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  At this time I'm going to ask Mr. Huber to

9   state the elements of the offense to which you are pleading.

10  The elements of the offense are those matters that the

11  government would have to prove beyond a reasonable doubt at a

12  trial if you went to trial on the charge.

13         Mr. Huber.

14         MR. HUBER:  Thank you, Your Honor.

15         Mr. Beria is pleading guilty to wire fraud under Title

16  18, United States Code, Section 1343.

17         There are four elements to wire fraud.  The first is

18  that the defendant knowingly devised or participated in a

19  scheme to defraud someone by using false or fraudulent

20  pretenses, representations, or promises; two, the false

21  pretensions, representations, or promises were about a

22  material fact; three, the defendant acted with the intent to

23  defraud; and, four, the defendant transmitted or caused to be

24  transmitted by wire some communication in interstate commerce

25  to help carry out the scheme to defraud.

1          THE COURT:  Mr. Beria, do you understand that those are

2    the four elements that the government would have to prove to

3    convict you?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  I'm now going to ask Mr. Huber to state what

6    the government's evidence would be.  This is essentially the

7    facts as alleged by the government.  After he finishes, I'm

8    going to ask you if you disagree with any of the facts that

9    he states.  If you do, tell me and we'll discuss those at

10    that time.

11          Mr. Huber.

12          MR. HUBER:  Thank you, Your Honor.

13          At trial, among other evidence, the government would

14    produce admissible evidence of the following facts.

15          For several years Mr. Beria worked with Warner Wicker to

16    obtain, manage, and develop properties in Georgia.  In

17    connection with this work, Mr. Beria had a company called

18    LSC 1 Management and a second company called Saks Management

19    and Associates, LLC.

20          In or about June 2015, Mr. Wicker, through Wicker LLC,

21    agreed to purchase the Westminster Square Apartments in

22    Marietta, Georgia.  Mr. Wicker hired Mr. Beria through LSC 1

23    to be the property manager of the Westminster Square

24    Apartments.

25          Mr. Beria, through Saks Management, owned another

1    apartment complex, The Park at Sylvan in Atlanta, Georgia.

2    As the property manager for the Westminster Square

3    Apartments, Mr. Beria had access to its bank accounts and

4    rent money.

5        On or about July 10th, 2016, Saks Management and Sung

6    Contracting entered into an agreement for construction to

7    take place on The Park at Sylvan apartments.  Mr. Beria

8    signed on behalf of Saks Management.

9        That contract was to perform renovations of the

10   apartment buildings, including the individual units, replace

11   the fence along the property boundaries, and renovating the

12   front office.

13       Your Honor, it appears that Mr. Beria and Mr. Morris

14   just cut off.

15       THE COURTROOM DEPUTY:  We'll give them a minute to dial

16   back in.

17       THE COURT:  Let's give it a moment and see if he comes

18   back in.

19       (Pause in the proceedings.)

20       MR. MORRIS:  I'm sorry, we lost you there for a moment.

21   I apologize, I don't know what happened.

22       THE COURT:  That's okay.  I believe when you left

23   Mr. Huber was reaching the point of the agreement to conduct

24   the work on the other apartment.  Were you all with us up to

25   that point, Mr. Morris?

1          MR. MORRIS:  Yes, sir, that's fine.

2          THE COURT:  Okay, Mr. Huber, if you will pick up at that

3     point then and move forward.

4          MR. MORRIS:  Can you give me the paragraph number,

5     Chris?

6          MR. HUBER:  So it's similar to paragraph 9.

7          MR. MORRIS:  Okay, very good.

8          MR. HUBER:  It's slightly different but --

9          MR. MORRIS:  That's okay.

10         MR. HUBER:  So this may be repeating a few of the lines

11    that they heard but I think that's better than skipping, Your

12    Honor.

13         THE COURT:  Yes.

14         MR. HUBER:  So the contract between Saks Management and

15    Sung Contracting was to perform renovations on the apartment

16    buildings, replace the fence, and renovate the front office

17    and utility storage buildings.

18         The full contract price was $2,302,925 to be paid in

19    installments.  Mr. Beria paid Sung Contracting the following

20    amounts:  On July 6, 2016, $421,155; on September 16th, 2016,

21    $300,824; on November 14th, 2016, $350,000; on December 13th,

22    2015, $250,000; on January 17th, 2017, $100,000; and on

23    February 3rd, 2017, $200,000.  Each of these payments was

24    directed by Mr. Beria and was made using funds from the

25    Westminster Square Apartments.

1     On or about August 15th of 2016, Mr. Beria provided

2    Mr. Wicker a written report regarding the status of various

3    properties in the United States that Mr. Beria managed.  He

4    included a discussion of the Westminster Square Apartments.

5     As part of that report, Mr. Beria included a quarterly

6    summary of expenses, first phase renovation costs, and taxes

7    for the apartments.  Mr. Beria included with those expenses a

8    schedule claiming to show some construction expenses related

9    to the Westminster Square Apartments when he knew that those

10    expenses related to The Park at Sylvan apartments.

11     The schedule falsely claimed that Sung Construction had

12    been paid $421,155 for work at the Westminster Square

13    Apartments.

14     On or about November 5th, 2016, Mr. Beria provided a

15    similar report to Mr. Wicker.  It included a schedule

16    claiming to show that Sung Construction expenses related to

17    the Westminster Square Apartments, when those expenses were

18    in fact related to The Park at Sylvan apartments.  The

19    schedule falsely claimed that Sung Construction had been paid

20    $300,825 for work at the Westminster Square Apartments.

21     On January 17th, 2017, Mr. Beria caused a $100,000 wire

22    transfer from LSC 1's Westminster Square Apartments' Bank of

23    the Ozarks account ending in 2796 to a Bank of America

24    account ending in 0294 to pay Sung Contracting for work on

25    The Park at Sylvan apartments.

1          The Bank of Ozarks was in the Northern District and the

2    wire transferred traveled outside of Georgia.

3          Thank you, Your Honor.

4          THE COURT:  Mr. Beria, do you disagree with any of the

5    facts as were stated by Mr. Huber?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  So you admit that you did make these false

8    representations using the wire transfers and so forth for the

9    purpose of fraudulently transferring these funds?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Mr. Huber, what are the potential penalties

12   that the defendant faces?

13         MR. HUBER:  The penalties for wire fraud, Title 18,

14   United States Code, Section 1343, are as follows:  The

15   maximum term of imprisonment is 20 years.  There is no

16   mandatory minimum term of imprisonment.  The maximum term of

17   supervised release is three years.  The maximum fine is

18   $250,000, or twice the gain or twice the loss, whichever is

19   greatest, due and payable immediately.  There's full

20   restitution due and payable immediately to all victims of the

21   offenses and relevant conduct.  There's mandatory special

22   assessment of $100 due and payable immediately.  And there's

23   forfeiture of any and all proceeds from the commission of the

24   offense.

25         THE COURT:  Mr. Beria, do you understand those are the

1    possible penalties that you face?

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  Do you understand that it's not possible for

4    me to tell you today exactly what your sentence is going to

5    be?

6         THE DEFENDANT:  Yes, sir.

7         THE COURT:  Do you understand that one of the factors I

8    will take into account in deciding on a proper sentence will

9    be sentencing guidelines?  These guidelines were mentioned in

10   your plea agreement in terms of some agreements that you and

11   the government have made regarding the calculations of those

12   guidelines, but I want to be sure you understand the

13   guidelines are not mandatory; they are advisory, which means

14   that the Court may impose a sentence within the guidelines,

15   above the guidelines, or below the guidelines.  Do you

16   understand that?

17        THE DEFENDANT:  Yes, Your Honor.

18        THE COURT:  Speaking of the plea agreement, there's

19   another matter in the agreement I want to review with you.

20   You will recall that Mr. Huber addressed the fact that you

21   had waived certain appeal rights in this case and I want to

22   address that with you for just a moment.

23        First, let me state to you the rights you would have if

24   you did not waive them.

25        The defendant in every criminal case has the right to

1    file a direct appeal immediately after his conviction and

2    sentence in which he may raise any issues regarding the

3    handling of his case in this court that he wishes to raise.

4        You also have another opportunity through the filing of

5    a motion that is sometimes referred to as a petition for writ

6    of habeas corpus, but it is simply another opportunity that

7    you have to challenge the legality of your conviction and

8    sentence.

9        Those are rights that every defendant has unless he

10   gives them up.

11       In your plea agreement you have given up those rights

12   for the most part.  There are three very limited

13   circumstances in which you would have a right to have a

14   review of what takes place in this court.

15       First, if the government files an appeal for any reason,

16   you have a right to file a cross-appeal in which you may

17   raise issues for the appellate court to consider.

18       Second, I mentioned the sentencing guidelines.  If I do

19   impose a sentence that's greater than what the guidelines

20   call for, you would have a right to appeal that sentence.

21       And finally, you always reserve the right to challenge

22   constitutionally ineffective assistance of counsel.

23       But aside from those three circumstances, you will

24   essentially be bound by my decisions concerning acceptance of

25   your plea and the sentence that I impose.  Do you understand

1  that?

2       THE DEFENDANT:  Yes, Your Honor.

3       THE COURT:  And, Mr. Morris, have you discussed this

4  with your client such that you're comfortable he does in fact

5  understand?

6       MR. MORRIS:  Yes, Your Honor.

7       THE COURT:  Thank you.

8       Mr. Beria, do you understand that a part of your

9  sentence will likely include a term of supervised release,

10  which is a term of supervision that would follow any term of

11  imprisonment and it would include rules governing your

12  conduct that if you violated could result in your having to

13  serve more time in custody?

14       THE DEFENDANT:  Yes, sir.

15       THE COURT:  Do you understand that your sentence is

16  likely to include a requirement that you pay restitution?

17       THE DEFENDANT:  Yes, sir.

18       THE COURT:  You understand there is also a likelihood,

19  and as I understand I think there's an agreement, but there

20  will also be a forfeiture as a part of your sentence?

21       THE DEFENDANT:  Yes, sir.

22       THE COURT:  Do you understand that in the federal system

23  parole has been abolished, which means that if you were

24  sentenced to prison you would not be released early on

25  parole?

1   THE DEFENDANT:  Yes, sir.

2   THE COURT:  Are you a citizen of the United States,

3 Mr. Beria?

4   THE DEFENDANT:  Yes, Your Honor.

5   THE COURT:  The reason I ask that is there are potential

6 consequences if you are not a citizen about which I would

7 need to you advise you, so I won't go into those.

8   Is there anything we've talked about, Mr. Beria, that

9 you do not feel you understand?

10   THE DEFENDANT:  No, sir.

11   THE COURT:  Do you have any question before I accept

12 your plea of guilty?

13   THE DEFENDANT:  No, sir.

14   THE COURT:  Do you feel that you've had a sufficient

15 opportunity to talk about your case with Mr. Morris and to

16 have him answer any questions you might have before entering

17 this plea?

18   THE DEFENDANT:  Yes, sir.

19   THE COURT:  Are you satisfied with the representation

20 he's provided to you?

21   THE DEFENDANT:  Yes, sir.

22   THE COURT:  Mr. Morris, do you feel you've had a

23 sufficient time to investigate your client's case and to

24 advise him concerning the entry of his plea?

25   MR. MORRIS:  Yes, Your Honor.

 1        THE COURT:  Are you aware of any reason I should not

 2    accept the plea?

 3        MR. MORRIS:  No, sir.

 4        THE COURT:  Is there anything else you want me to

 5    address with your client on the record at this time?

 6        MR. MORRIS:  No, Your Honor.

 7        THE COURT:  Mr. Huber, anything further the government

 8    wishes the Court to address?

 9        MR. HUBER:  Not with respect to the defendant, Your

10    Honor, but I would ask that you pronounce the preliminary

11    order of forfeiture at some point.

12        THE COURT:  Very well.

13        I do find that the defendant understands the charges and

14    consequences of his plea of guilty.  I've observed him during

15    this proceeding and he does not appear to be under the

16    influence of any substances that might affect his actions or

17    his judgment in any manner.

18        I find that the plea has a factual basis that is free of

19    any coercive influence of any kind.  I find there have been

20    no promises made to the defendant except those as set out in

21    the plea agreement.  I therefore find that the plea is freely

22    and voluntarily entered by the defendant.

23        It's therefore ordered that the plea of guilty to the

24    charge in the information be accepted and entered.  The

25    defendant is hereby adjudged guilty of the charge.

1        The Court will also order the preliminary order of

2   forfeiture with regard to the money judgment as contemplated

3   in the plea agreement between the parties for a sum of money

4   representing the amount of proceeds obtained or representing

5   either that obtained or the loss as represented by the

6   charged conduct.

7        Mr. Beria, the next event that will happen is that I

8   will refer your case to a probation officer, who will prepare

9   a presentence report.  You and Mr. Morris will get a copy of

10  that report, as will Mr. Huber, and will have an opportunity

11  to object to any of the findings in the report with which you

12  disagree.

13       We'll then set the matter down for a sentencing hearing,

14  at which I'll hear from the government and from you and your

15  attorney, if there are victims who wish to be heard, they

16  would also have an opportunity to be heard at that time and

17  it is at that time that I would make the decision concerning

18  the sentence in the case.

19       Mr. Huber, is there any objection to the defendant

20  remaining on bond pending sentencing?

21       MR. HUBER:  No, Your Honor.  I did want to note that he

22  would continue to be on pretrial supervision under the case

23  2:20-CR-026.

24       MR. MORRIS:  We have no objection to that, Your Honor.

25       THE COURT:  Very well.  The bond and conditions as set

1  in the case that will be superseded by this information will

2  continue to apply to you, Mr. Beria, pending your sentencing

3  in the case.

4      If there's nothing further, thank you for being here

5  this morning and allowing us to handle this in this matter.

6  We are adjourned.  Thank you.

7      MR. MORRIS:  Thank you, Your Honor.

8      MR. HUBER:  Thank you.

9      (Proceedings concluded, 10:35 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     C E R T I F I C A T E

2

3

4    UNITED STATES DISTRICT COURT:

5    NORTHERN DISTRICT OF GEORGIA:

6

7              I hereby certify that the foregoing pages, 1

8    through 29, are a true and correct copy of the proceedings in

9    the case aforesaid.

10              This the 9th day of November, 2020.

11

12
                         /s/ *Amanda Lohnaas*
13                  _____

14                  Amanda Lohnaas,
                    Official Court Reporter
15                  United States District Court

16

17

18

19

20

21

22

23

24

25